KSHEL REALTY CORP. and Stardial Communications Corp., doing business as Irreplaceable Artifacts, as agents for cosignors, secured parties and title holders of personality, Plaintiffs–Counter–Defendants–Appellants,

v.

CITY OF NEW YORK, Department of Buildings of City of New York, P.E. Ronny A. Livian, Manhattan Borough Commissioner for Department of Buildings, R.A. Richard Visconti, Acting Commissioner of Department of Buildings, P.E. Manher Shah, Deputy Borough Superintendent, Department of Housing Preservation and Development, Richard T. Roberts, Commissioner of Department of Housing Preservation and Development, Eugene McArdle, Director of Demolition of the Department of Housing Preservation and Development, Vito Mustaciuolo, Assistant Commissioner for the Department of Housing Preservation and Development, and John Does, I–X, Defendants–Counter–Claimants–Appellees,

Gateway Demolition Corp., and Krzysztof Noga, Defendants–Counter–Claimants.

Nos. 06–4557–cv(L), 07–3035–cv(con).

United States Court of Appeals, Second Circuit.

Aug. 5, 2008.

14

Herbert Rubin, Herzfeld & Rubin, P.C., New York, NY, for Plaintiffs–Counter–Claimants–Appellants.

Michael A. Cardozo, Corporation Counsel of the City of New York (Francis F. Caputo, Dona B. Morris, Sherrill Kurland, Assistant Corporate Counsels, on the brief), New York, NY, for Defendants–Counter–Claimants–Appellees.

PRESENT: Hon. PETER W. HALL, Hon. DEBRA A. LIVINGSTON and Hon. JOHN R. GIBSON,* Circuit Judges.

## SUMMARY ORDER

Plaintiffs–Counter–Claimants–Appellants Kshel Realty Corporation and Stardial Communications Corporation, doing business as Irreplaceable Artifacts ("Plaintiffs"), appeal from the order of the district court granting summary judgment to the Defendants–Counter–Claimants–Appellees the City of New York, the Department of Buildings of the City of New York ("DOB"), and other city agencies and em-

ployees (collectively, "City") on the Plaintiffs' procedural and substantive due process claims. The Plaintiffs' claims arose from the destruction of a building, owned by Kshel in which Stardial was a tenant, located at Second Avenue and Houston in Manhattan ("Building"). The City demolished the Building after DOB officials issued an immediate emergency declaration authorizing that demolition, pursuant to DOB Operation Policy and Procedure Notice #16/93 ("OPPN"). We assume the parties' familiarity with the remaining facts and the proceedings in the district court.

We review a grant of summary judgment *de novo,* "examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant." *Sheppard v. Beerman,* 317 F.3d 351, 354 (2d Cir.2003). "Summary judgment is appropriate only if it can be established 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* at 354–55 (quoting Fed.R.Civ.P. 56(c)). In this case, the record contains no evidence establishing a genuine issue of material fact with respect to whether the City violated the Plaintiffs' procedural or substantive due process rights when it demolished the Building.

 Procedural Due Process

In evaluating a plaintiff's procedural due process claim, this Court asks "(1) whether plaintiffs possessed a protected liberty or property interest, and, if so, (2) what process plaintiffs were due before they could be deprived of that interest." *Sealed v. Sealed,* 332 F.3d 51, 55 (2d Cir.2003). In this case, the parties do not dispute that the demolition of the Building deprived the

---

* The Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

Plaintiffs of their property rights. Rather, the Plaintiffs argue that the City violated their procedural due process rights when it failed to provide them with adequate predeprivation process before demolishing their building.

Our analysis of the Plaintiffs' procedural due process claim begins with the Supreme Court's holding in *Parratt v. Taylor*, 451 U.S. 527, 538, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), that although notice and predeprivation hearing are generally required, the lack of such predeprivation process will not violate due process in certain circumstances provided there is sufficient postdeprivation process available to the person deprived of his property interest. As the Court recognized in *Parratt*, "either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Id.* at 539, 101 S.Ct. 1908. Generally, "[i]t is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination." *Hodel v. Va. Surface Min. and Reclamation Ass'n, Inc.*, 452 U.S. 264, 303, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981).

■ Here, the relevant question is whether it was impractical for the City to provide some form of predeprivation process. "In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking.... Conversely, in situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake ... or where the

State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process." *Zinermon v. Burch*, 494 U.S. 113, 132, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (internal citations omitted).

Further, where, as in this case, the challenged taking resulted from an official's discretionary decision to invoke an emergency procedure, this Court affords "the decision to invoke the procedure some deference." *Catanzaro v. Weiden*, 188 F.3d 56, 62 (2d Cir.1999). In *Catanzaro*, we addressed a plaintiff's challenge to a city official's decision to invoke an emergency procedure that resulted in the demolition of buildings owned by the plaintiff after that official determined that the buildings had been rendered unsafe by an auto accident. In that case, we observed "[u]nder *Hodel*, the due process guarantee is offended only when an emergency procedure is invoked in an abusive and arbitrary manner; therefore, there is no constitutional violation unless the decision to invoke the emergency procedure amounts to an abuse of the constitutionally afforded discretion." *Id.* (citing *Hodel*, 452 U.S. at 302–03, 101 S.Ct. 2352). Accordingly, "where there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist, or that affording predeprivation process would be otherwise impractical," an official's decision to invoke an emergency procedure and proceed without predeprivation process does not violate due process. *Id.* at 63.

In this case, the Plaintiffs argue that evidence that the Building was stable after the collapse of the wall demonstrated a genuine issue of material fact with respect to whether affording them predeprivation process would have been impractical. The record contains declarations from associ-

ates of the Plaintiffs who were at the scene before and during demolition and who stated that the Building appeared to be stable after the wall collapse and from an expert who stated that the Building could have been stabilized and made safe through shoring rather than demolition. It is undisputed, however, that the south wall collapsed and that the Building had sustained considerable damage as a result. Further, the record also contains evidence that a sizeable hole formed in the south wall of the Building after the collapse and that several people at the scene observed dislodged and hanging structural beams, multiple collapsed floors, sagging and sloping floor slabs and other portions of the Building that were in imminent danger of further collapse. As we determined in *Catanzaro,* "[i]n light of these undisputed facts, and despite the evidence submitted by Plaintiffs, which we assume to be true for purposes of this analysis, that the building was in fact structurally sound, no reasonable trier of fact could find that [the City officials] acted arbitrarily or otherwise abused [their] discretion, in deciding to invoke the emergency procedure." 188 F.3d at 63. Absent evidence that the DOB officials in this case acted arbitrarily or otherwise abused their discretion, the decision to invoke the emergency procedure in this case did not constitute a violation of due process.

The Plaintiffs argue that because the OPPN "envisions that the work will begin by the day after the declaration" the terms of the emergency procedure provide time for a predeprivation hearing, and thus the DOB officials abused their discretion in failing to hold such a hearing or to seek a judicial determination that demolition was necessary. This argument overlooks the meaning of the OPPN's language. The phrase "by the day after the declaration" could be replaced with the phrase "no later than the day after the declaration," with-

out changing the policy's meaning. In other words, the OPPN calls for demolition to begin sooner rather than later. In calling for demolition to begin "by the day after the declaration" the OPPN reflects the urgency of situations that fall within the parameters of an "immediate emergency."

The Plaintiffs argue that the City's failure to comply with the administrative code provisions governing the repair and removal of unsafe buildings violated their right to procedural due process. According to the Plaintiffs, that the administrative code provides for a judicial determination before the start of demolition is evidence that predeprivation process was feasible in this instance. We find this argument to be unavailing for two reasons. First, we have recognized that "[a] breach of procedural requirements does not create a due process violation unless an individual was denied a fair forum for protecting his state rights." *McDarby v. Dinkins,* 907 F.2d 1334, 1337 (2d Cir. 1990) (internal quotation marks omitted). As we observed in *McDarby,* "a contrary rule would bring within the scope of section 1983 myriad claimed violations of local laws, thus confusing the separate provinces of state and national laws that are central to our federal system." *Id.* Second, the Plaintiffs' argument overlooks the purpose of the OPPN, which is to address situations in which a building's condition creates an immediate risk to public safety. Requiring an official to seek a judicial determination prior to invoking an emergency procedure intended to address urgent situations contradicts the very reason the emergency procedure exists.

■ Substantive Due Process

■ To succeed on their substantive due process claim, the Plaintiffs must demonstrate that the challenged action was

"arbitrary, conscience-shocking, or oppressive in a constitutional sense," rather than merely "incorrect or ill-advised." *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995) (internal quotation marks omitted). Here, the Plaintiffs failed to offer evidence that the DOB officials in this case acted arbitrarily or in a conscience-shocking manner in issuing the immediate emergency declaration. As discussed above, there was ample evidence in the record to support the officials' conclusion that the Building had been rendered unsafe by the wall collapse. Further, it is neither arbitrary nor shocking for an official who has determined that a structure is unsound to prohibit or control access to that structure, even to the extent of barring the entry of the owners to obtain possessions or merchandise. Finally the Plaintiffs offered no evidence that the City participated in or acquiesced to the alleged thefts of merchandise that form one basis for the Plaintiffs' claim that the demolition of the Building violated their right to substantive due process.

### ■ District Court Judgment

■ The Plaintiffs request that this Court direct the district court to clarify its judgment in this case. At oral argument, the City conceded that it did not cross-appeal from the district court's order denying the City's request that it amend its judgment. To the extent that the Plaintiffs seek an order instructing the district court to amend its judgment to reflect that the dismissal of the state claims against the City should not have preclusive effect on those claims in state court, it is for the state court considering those claims to determine whether the Plaintiffs are precluded from raising them. Accordingly, we decline to direct the district court to correct or amend its judgment in this case.

For the foregoing reasons, we **AFFIRM** the judgment of the District Court.